UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROJECT ON GOVERNMENT
OVERSIGHT, INC

    *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, OFFICE FOR CIVIL RIGHTS
AND CIVIL LIBERTIES

    *Defendants*.

Civ. A. No. 18-2051 (RCL)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
<u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

DANIEL P. SCHAEFER
Assistant United States Attorney

*Counsel for Defendants*

## **TABLE OF CONTENTS**

Table of Contents ............................................................................................................ i

Table of Authorities ....................................................................................................... ii

ARGUMENT ................................................................................................................. 1

I.      The Sufficiency of the Agency's Search Is No Longer in Dispute.................................... 1

II.     The Materials Satisfy the Inter-Agency or Intra-Agency Threshold Requirement. ........... 6

III.    The Department's Evidence Satisfies the Requirements to Invoke the Deliberative
        Process Privilege. .............................................................................................. 7

        A.      The Department Withheld Deliberative Material and Produced All Reasonably
                Segregable Facts. .................................................................................. 7

        B.      The Expert Reports Are Pre-Decisional. ............................................... 12

IV.     The Department's Evidence Shows Reasonably Foreseeable Harm. ............................. 15

Conclusion ................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abtew v. Dep't of Homeland Sec.*,
   808 F.3d 895 (D.C. Cir. 2015) ........................................................................... 16

*Am. Ctr. for Law & Just. v. Dep't of Just.*,
   325 F. Supp. 3d 162 (D.D.C. 2018) ................................................................... 5, 6

*Ancient Coin Collectors Guild v. Dep't of State*,
   641 F.3d 504 (D.C. Cir. 2011) ........................................................................... 7, 8

*Bloomberg, L.P. v. SEC*,
   357 F. Supp. 2d 156 (D.D.C. 2004) ...................................................................... 10

*Cleveland v. United States*,
   128 F. Supp. 3d 284 (D.D.C. 2015) ....................................................................... 11

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ......................................................................... 12, 14

*Crummey v. Soc. Sec. Admin.*,
   794 F. Supp. 2d 46 (D.D.C. 2011) ........................................................................ 11

*Ctr. for Investigative Reporting v. Customs & Border Prot.*,
   436 F. Supp. 3d 90 (D.D.C. 2019) ........................................................................ 15

*DeFraia v. CIA*,
   311 F. Supp. 3d 42 (D.D.C. 2018) .......................................................................... 6

*Elec. Frontier Found. v. Dep't of Just.*,
   739 F.3d 1 (D.C. Cir. 2014) .................................................................................... 7

*Elec. Privacy Info. Ctr. v. DHS*,
   384 F. Supp. 2d 100 (D.D.C. 2005) ................................................................... 12, 14

*Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*,
   443 U.S. 340 (1979) ........................................................................................ 12, 14

*Fortson v. Harvey*,
   407 F. Supp. 2d 13 (D.D.C. 2005) ......................................................................... 8, 9

*Genereux v. Raytheon Co.*,
   754 F.3d 51 (1st Cir. 2014) .................................................................................... 5

*Gilman v. Dep't of Homeland Sec.*,
   32 F. Supp. 3d 1 (D.D.C. 2014) .............................................................................. 6

*Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   762 F. Supp. 2d 123 (D.D.C. 2011) ........................................................................ 12

*Hall & Assocs. v. EPA*,
   Civ. A. No. 18-1749 (RDM), 2021 WL 1226668 (D.D.C. Mar. 31, 2021) ............................. 12

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
   138 S. Ct. 13 (2017) ............................................................................................ 5

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   243 F. Supp. 3d 155 (D.D.C. 2017) ........................................................................ 8

*Jud. Watch of Fla., Inc. v. Dep't of Just.*,
   102 F. Supp. 2d 6 (D.D.C. 2000) .......................................................................... 13

*Jud. Watch, Inc. v. Dep't of Just.*,
   Civ. A. No. 17-0832 (CKK), 2019 WL 4644029 (D.D.C. Sept. 24, 2019) ..................... 15, 17

*Jud. Watch, Inc. v. FDA*,
   449 F.3d 141 (D.C. Cir. 2006) ............................................................................. 12

*Keeping Gov't Beholden, Inc. v. Dep't of Just.*,
   Civ. A. No. 17-1569 (FYP), 2021 WL 5918627 (D.D.C. Dec. 13, 2021) ............. 15, 16, 17, 18

*Mapother v. Dep't of Just.*,
   3 F.3d 1533 (D.C. Cir. 1993) ...................................................................... 8, 10, 11

*McKinley v. Bd. of Governors of the Fed. Rsrv. Sys.*,
   849 F. Supp. 2d 47 (D.D.C. 2012) ......................................................................... 8

*Nat'l Sec. Archive v. CIA*,
   752 F.3d 460 (D.C. Cir. 2014) .......................................................................... 8, 10

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) .......................................................................................... 12

*People for Am. Way Found. v. Dep't of Justice*,
   451 F. Supp. 2d 6 (D.D.C. 2006) .......................................................................... 6

*Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*,
   598 F.3d 865 (D.C. Cir. 2010) ............................................................................. 16

*Quarles v. Dep't of Navy*,
   893 F.2d 390 (D.C. Cir. 1990) .............................................................................. 9

*Reinhard v. Dep't of Homeland Sec.*,
   Civ. A. No. 18-1449 (JEB), 2019 WL 3037827 (D.D.C. July 11, 2019) ...................... 8, 9

*Smith v. Dep't of Lab.*,
  798 F. Supp. 2d 274 (D.D.C. 2011) ........................................................................................ 14

*United States v. Olano*,
  507 U.S. 725 (1993) ................................................................................................................ 5

*Wolfe v. Dep't of Health & Hum. Servs.*,
  839 F.2d 768 (D.C. Cir. 1988) ................................................................................................ 7

Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition") fails to establish the existence of a genuine dispute of material fact concerning any of the records that Defendant U.S. Department of Homeland Security ("Department" or "Agency" or "DHS") or its component, the Office for Civil Rights and Civil Liberties (the "Civil Rights Office") withheld under Freedom of Information Act ("FOIA") Exemption 5. Additionally, Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Cross-Motion") fails to establish the absence of genuine dispute of material that warrants the Court granting summary judgment to Plaintiff.[1]  For the following additional reasons, Defendants respectfully request that the Court grant summary judgment to Defendants and deny summary judgment to Plaintiff.

## ARGUMENT

## I.    <u>The Sufficiency of the Agency's Search Is No Longer in Dispute.</u>

As an initial matter, Plaintiff contends that the Department failed to conduct an adequate search for subject matter expert reports and that "there are a voluminous number of [subject matter expert reports] not identified in the index."  Pl.'s Mem. at 7 n.5 (ECF No. 53-1 at 13). Plaintiff requests that the Court order the Department to "redo its search regarding [subject matter expert reports] to ensure that the agency has conducted an adequate search."  *Id.*  The Court should deny Plaintiff's request because the record establishes that Department conducted a reasonable search pursuant to the parties' agreement on a search protocol.  The parties' joint filings and contemporaneous communications establish that Plaintiff stipulated to the sufficiency

---

[1]     Plaintiff filed a combined Memorandum in support of its Opposition to Defendants' Motion and its Cross-Motion for Summary Judgment (hereinafter, "Plaintiff's Memorandum" or "Pl.'s Mem.").

of the Agency's search and, further, that the parties' dispute is limited to the contested

Exemption 5 withholdings presented in Defendant's Motion.

Plaintiff's Opposition concedes that Defendants' "motion for summary judgment

accurately depicts the procedural history of this FOIA litigation."  Pl.'s Mem. at 3 n.3.  The

parties' joint filings and communications summarized in the procedural history section of

Defendant's Motion (which Plaintiff does not contest) establish that the parties reached

agreement on the scope of the Second Request and on the records the Department would deem

responsive.

On March 22, 2021, Defendants sent an email communication to Plaintiff in which the

Department conveyed its understanding of an "expert report clarification memo" that Plaintiff

had provided Defendants on March 8, 2021:

> [The Department] has reviewed the "expert report clarification memo" that pertains
> to the second request and which you sent to us by email on March 8.  As we
> discussed with you during the March 8 meet and confer call, I wanted to give a
> response from DHS in writing to confirm its understanding of the new
> responsiveness and review protocol it will be applying to the search results.
>
> As [the Department] understands the clarification memo, DHS will now only deem
> responsive: **(1) independent contractor subject matter expert created initial
> reports and (2) DHS [Civil Rights Office] final expert summary and
> recommendation memoranda responsive to the Plaintiff's FOIA request**.
> Among other documents potentially responsive to the scope of the original second
> request, any requests for information, ICE or other component responses or
> background documents, or summaries of allegations not incorporated into the text
> of the two documents listed above, will now be considered **non-responsive** and not
> further reviewed and processed for possible release.  Further, DHS will notify
> component offices they no longer need to process any previously referred
> documents that are outside the scope of the second request as narrowed herein.

Email from D. Schaefer to R. Nabatoff, re: Expert Report Clarification, Mar. 22, 2021 (Defs.'

Ex. 3) (emphasis in the original).  Defendants followed up with Plaintiff on March 24, 2021:

"Again, please confirm that DHS's understanding of the expert report clarification memo is

correct and that DHS may resume further review under the new protocol outlined in my 3/22

email." *Id.*  Plaintiff responded on March 24, 2021, "CONFIRMED WITH DHS'

UNDERSTANDING OF THE EXPERT REPORT CLARIFICATION MEMO." *Id.*.  The

parties' joint status report, filed that same day, stated that "Defendant will resume further review

as outlined in Defendant's March 22 email once they receive a confirmation from Plaintiffs."

3/24/21 JSR at 1 (ECF No. 32).

   After the parties agreed on a responsiveness criteria and review protocol for the Second

Request as documented in the parties' written communications and joint filings, no additional

disputes arose between the parties on the sufficiency of the Department's search or the

responsiveness criteria or review protocol that the Department applied pursuant to the parties'

agreement.  *See* Defs.' Mem. at 5-6.  In the parties' joint status report dated May 24, 2021, the

Department reported that the Civil Rights Office had issued a final production and final response

to Plaintiff's Second Request on May 21, 2021.  ECF No. 34 at 1.  Plaintiff reported that it "will

need time to review the Agency's final production to determine if there are any open issues

concerning the sufficiency of the Agency's response to its second FOIA request."  *Id.* at 1.

   In the parties' next joint status report filed on June 23, 2021, the parties reported on the

outstanding disputes concerning the sufficiency of the Department's final response to the Second

Request as follows:

> Plaintiff has identified a set of 'withheld in full' records from the Agency's last
> production for which Plaintiff has requested that Defendant prepare a draft Vaughn
> index.  Defendant will begin preparing a *Vaughn* index that addresses those specific
> records that Plaintiff identified.  Additionally, Plaintiff will be reviewing
> Defendant's earlier productions and will send an email communication to
> Defendant identifying any additional records with withholdings or line-by-line
> redactions for which Plaintiff requests that Defendant prepare *Vaughn* index
> entries.  The parties will continue to confer through their counsel in the coming
> weeks to try to first resolve any outstanding questions or objections Plaintiff may
> raise concerning any contested withholdings from the Agency's productions
> without the Court's involvement.

ECF No. 36 at 1-2.

Also on June 23, 2021, Defendants' counsel sent an email to Plaintiff's counsel to confirm and document the parties' agreement and to establish the parties' expectations for the remainder of the meet and confer process.  Among other points discussed in Defendants' email, Defendants stated:

> The Agency will not be required to justify the sufficiency of its searches or its responsiveness review, as that was negotiated between the parties and is no longer in dispute, nor will the agency be required to prepare a *Vaughn* index or supporting declaration for other withholdings that Plaintiff does not identify as contested and still in dispute as part of this meet and confer process.

Email from D. Schaefer to R. Nabatoff, June 23, 2021 (Defs.' Ex. 4 at 1).  Defendants requested confirmation that "Plaintiff agrees to this process I have outlined above."  *Id.* at 1.  Defendants' email further explained that the parties had agreed that: (1) the Department would begin working on preparing draft *Vaughn* entries for 491 pages of withheld-in-full records that Plaintiff had already identified as containing contested Exemption 5 withholdings; (2) Plaintiff would "review the Agency's productions and identify any specific records from earlier productions with line-by-line redactions that Plaintiff requests the Agency to prepare a Vaughn entry"; and (3) "there may be certain categories of 'withheld in full' records from earlier productions that plaintiff may request be included in the *Vaughn* index."  *Id.* at 1.  Plaintiff responded on June 23, 2021, "we are in agreement and the draft JSR is approved for filing."  *Id.* at 1.

As the parties continued to confer on the outstanding disputes, the parties filed a series of additional joint status reports beginning July 23, 2021, through April 13, 2022, when the parties jointly requested a briefing schedule.  The additional joint status reports that the parties filed, through the last joint status report on April 13, 2022, confirmed that the dispute the parties presented to the Court for resolution was limited to the discrete set of records from the Department's productions that included Exemption 5 withholdings that Plaintiff identified as contested during the parties' meet and confer communications.  *See* Defs.' Mem. at 1, 6; ECF

Nos. 38, 40, 42, 44, 46, 48.  For example, in the parties' last joint status report filed on April 13, 2022, the parties requesting a briefing schedule for cross-motions for summary judgment "because the parties have reached an impasse on the contested Exemption 5 withholdings."  ECF No. 48 at 1.  "Parties may either forfeit or waive their rights during the course of litigation. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right."  *Am. Ctr. for Law & Just. v. Dep't of Just.*, 325 F. Supp. 3d 162, 167-68 (D.D.C. 2018) (Kelly, J.) (finding challenge to agency's search waived when plaintiff agreed in status report to narrow case to issues with agency's withholdings) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 n.1 (2017), and *United States v. Olano*, 507 U.S. 725, 733 (1993)) (alterations and internal quotation marks omitted).  Indeed, "once the parties have appeared in a civil matter, they routinely agree to narrow the issues in dispute or to give up important procedural rights."  *Am. Ctr.*, 325 F. Supp. 3d at 168.  "When the parties make representations at a conference about which issues remain outstanding, they may fairly be held to those oral representations."  *Id.* (citing *Genereux v. Raytheon Co.*, 754 F.3d 51, 57-59 (1st Cir. 2014)).

These principles are equally at play in FOIA cases.  As Judge Kelly has noted:

> These considerations compel the conclusion that, where sophisticated parties to a FOIA case have agreed to narrow the issues in a written status report, they generally may be held to their agreement under traditional waiver principles.  Given the volume of FOIA litigation in this District, and the fact that FOIA plaintiffs located anywhere in the country may file here, written status reports often play the same role in FOIA cases as pretrial conferences do in other civil litigation. Just as a party may agree to narrow the case during a pretrial conference, a FOIA plaintiff may agree to do so in a written status report.  Having voluntarily narrowed the case to a set of agreed-upon issues, the plaintiff may be said to have waived the others. . . . Thus, when a plaintiff narrows his FOIA request in a joint status report, it supersedes any broader request set forth in the plaintiff's complaint.  [And] where a plaintiff agrees in a joint status report not to challenge the adequacy of the government's search, she effectively narrows her request to cover only the documents the government has already located.

*Am. Ctr.*, 325 F. Supp. 3d at 168 (internal citations omitted).  Other judges in this Court have

joined Judge Kelly in deeming challenges in FOIA cases waived when a plaintiff narrowed its

case in status reports.  *See, e.g.*, *DeFraia v. CIA*, 311 F. Supp. 3d 42, 48 (D.D.C. 2018)

(McFadden, J.) (finding plaintiff waived right to challenge withholdings of other documents

when status reports narrowed dispute to specific contracts); *Gilman v. Dep't of Homeland Sec.*,

32 F. Supp. 3d 1, 22 (D.D.C. 2014) (Howell, J.) (plaintiff waived right to receive attachments to

emails when it narrowed its request in a status report); *People for Am. Way Found. v. Dep't of*

*Justice*, 451 F. Supp. 2d 6, 12 (D.D.C. 2006) (Bates, J.) (finding plaintiff had narrowed request

as noted in status reports).

Thus, Plaintiff has forfeited its challenge to the sufficiency of the Agency's search.  The

record establishes that the scope of the parties' dispute is limited to the issue presented in

Defendants' Motion, namely, whether the Department properly withheld the information in the

Exemption 5 withholdings that Plaintiff identified as contested during the parties' meet-and-

confer discussions.

## II.    **The Materials Satisfy the Inter-Agency or Intra-Agency Threshold Requirement.**

Defendants' Motion for Summary Judgment ("Defendants' Motion") demonstrated that

the materials in question qualify as intra-agency memoranda under the consultant corollary.

*See* Defs.' Mem. of Points & Authorities ("Defs.' Mem.") at 9-13 (ECF No. 52-1).  Plaintiff

writes in Opposition that "[Plaintiff] does not dispute that [the subject-matter expert reports]

constitute intra-agency documents subject potentially to FOIA's (b)(5) exemption."  *See* Pl.'s

Mem. at 5 n.4.  Thus, there is no dispute that the materials at issue qualify as intra-agency

memoranda.

III.    **The Department's Evidence Satisfies the Requirements to Invoke the Deliberative
       <u>Process Privilege.</u>**

A.    **The Department Withheld Deliberative Material and Produced All
      Reasonably Segregable Facts.**

Plaintiff's conclusory statements and arguments fail to establish the existence of a

genuine dispute of material fact on whether the expert reports with Exemption 5 withholdings

that Plaintiff identified as contested satisfy the elements of the deliberative process privilege.

Plaintiff mainly objects to the Department's decision to withhold factual information contained

in the expert reports.  *See* Pl.'s Mem. at 9-12, 14-17.  Plaintiff contends that any "factual

findings" or "factual observations" in the expert reports is neither deliberative nor pre-decisional.

The Court should reject the arguments because the Department's evidence supports its

determination to withhold the reports in full, including the withholding of facts in those reports

that were inextricably intertwined with the deliberative process and thus deemed non-segregable.

In this Circuit, factual information may be withheld when, as here, it is so thoroughly

integrated with deliberative material that its disclosure would expose or cause harm to the

Agency's deliberations.  *See Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 13 (D.C. Cir.

2014) (finding that "context matters," and here the entire document, including factual material,

"reflects the full and frank exchange" so that factual portions "could not be released without

harming the deliberative processes of the government"); *Ancient Coin Collectors Guild v. Dep't

of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) ("[T]he legitimacy of withholding does not turn on

whether the material is purely factual in nature or whether it is already in the public domain, but

rather on whether the selection or organization of facts is part of an agency's deliberative

process.").  The D.C. Circuit has stated that factual information should be examined "in light of

the policies and goals that underlie" the privilege and in "the context in which the materials are

used."  *Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc).

Purely factual material may be properly withheld when "it reflects an 'exercise of discretion of judgment calls.'" *Ancient Coin Collectors Guild*, 641 F.3d at 513 (quoting *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993)).  As one illustration of this general principle, the Circuit upheld an agency's decision to withhold factual summaries culled from a larger universe of facts.  "In doing so, 'the selection of the facts thought to be relevant' is part of the deliberative process; it necessarily involves 'policy-oriented *judgment*.'"  *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014) (quoting *Mapother*, 3 F.3d at 1539) (emphasis in the original).[2]  "When final decisionmakers rely on others to condense a mass of available information into a summary or set of factual findings that the staff thinks important to the final decisionmaker, the deliberative-process privilege applies."  *Reinhard v. Dep't of Homeland Sec.*, Civ. A. No. 18-1449 (JEB), 2019 WL 3037827, at *7 (D.D.C. July 11, 2019).

In an analogous case, a member of this Court held that non-disclosed portions of an investigative report of an equal opportunity complaint prepared by an Army investigator were pre-decisional and thus protected by the deliberative process privilege.  *Fortson v. Harvey*, 407 F. Supp. 2d 13, 16 (D.D.C. 2005).  The portions reflected elements of the decision-making process because they contained "investigative findings and/or recommendations" that were submitted to the investigator's superior for his approval.  *Id.*  As the *Fortson* court reasoned, "disclosure of this type of information could chill an investigating officer's willingness to engage

---

[2]    *See also Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 169 (D.D.C. 2017) (quoting *Ancient Coin Collectors Guild*, 641 F.3d at 513–14) (quoting *Ancient Coin Collectors Guild*, 641 F.3d at 513-14) (factual summaries culled from larger universe of facts presented to the agency "'reflect[ed] an exercise of judgment as to what issues are most relevant to the pre-decisional findings and recommendations'"); *McKinley v. Bd. of Governors of the Fed. Rsrv. Sys.*, 849 F. Supp. 2d 47, 63–64 (D.D.C. 2012) (holding that "purely factual" material was protectible under Exemption 5 because "[defendant] culled selected facts and data from the mass of available information").

in an open discussion with their superior officers with respect to their findings of fact and recommendations when investigating complaints." *Id.* at 16-17.

In the same way here, the Civil Rights Office relies on its subject-matter experts to investigate civil rights complaints. *See* Defs.' SMF ¶¶ 9, 2-8. The Civil Rights Office's experts conduct on-site investigations and prepare detailed reports that contain the experts' observations and findings and that provide the Civil Rights Office with recommendations based on applicable standards. *See id.* ¶¶ 10, 14-15. As the Agency's declarant explained, "the Department has determined that any factual information . . . that the Department withheld are inextricably intertwined with the experts' preliminary findings, recommendations, opinions, or policy-related discussions that the Department has deemed to be deliberative and pre-decisional." Defs.' SMF ¶ 34. "Disclosing any remaining facts in the withheld material would reveal the nature and substance of the Department's pre-decisional deliberations." *Id.* ¶ 35.

The Department's evidence establishes that its decision-makers rely on the Civil Rights Office's experts to conduct investigations of civil rights complaints. Relying on their subject-matter expertise, the experts will reduce their unverified observations into a report that contains a set of factual findings that the experts believe to be important to the Agency's decision-makers. *See Reinhard*, 2019 WL 3037827, at *7. As supported by abundant authority in this Circuit, the Civil Rights Office's experts' factual findings are properly withheld as they are "both revelatory of the [Department's] deliberative process and the investigator's judgment." *See id.*

Moreover, release of the experts' factual findings would "severely undermine" the Department's ability to investigate these complaints and gather the information that its decision-makers need to address the policymaking concerns at issue in the complaints. *See Quarles v. Dep't of Navy*, 893 F.2d 390, 392-93 (D.C. Cir. 1990) (withholding factual material because it

would expose agency's decision-making process and chill future deliberations); *Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 169 (D.D.C. 2004) (protecting notes taken by SEC officials at meeting with companies subject to SEC oversight; though factual in form, the notes would, if released, "severely undermine" the agency's ability to gather information from its regulates and in turn undermine the agency's ability to deliberate on the best means to address policymaking concerns in such areas). The Department's evidence establishes that the factual material that it withheld from the expert reports is non-segregable and an "an integral part of the protected act of deliberatively formulating policy." *See Nat'l Sec. Archive*, 752 F.3d at 465 (quoting *Mapother*, 3 F.3d at 1538).

The Agency's *Vaughn* index addresses 33 subject matter expert reports that the Agency determined to withhold in full. As shown above, those are all the reports that contain contested Exemption 5 withholdings. The Agency's *Vaughn* index establishes, with sufficient detail for each of the 33 documents in dispute, the Agency's specific reasons for withholding those reports in full. For example, the *Vaughn* entry for Document No. 1-24 addresses a report prepared by a psychiatric health care consultant retained by the Civil Rights Office. ECF No. 52-4 at 2 of 35. The report contains the expert's mental health expert findings regarding a site visit conducted at the Karnes County Family Residential Center. The Agency explained its determination to withhold the report in full, including the expert's preliminary factual findings, as follows:

> This document contains a Report prepared by a psychiatric health care consultant retained by DHS [Civil Rights Office]. [The Civil Rights Office's] expert consultant conducted an initial investigation evaluating U.S. Immigrations and Customs Enforcement ("ICE") employees and contractors' treatment of persons being detained at the Karnes County Family Residential Center. [The Civil Rights Office] withheld in full this Report, which included the expert's preliminary findings and initial recommendations regarding mental health resources at the Karnes County Family Residential Center.
>
> The expert's preliminary findings and recommendations that [the Civil Rights Office] withheld in full are deliberative in nature because they contain unverified

observations of first impression, expert analyses of facts and information gathered during the course of the expert's investigation of the facility, and the uninhibited opinions and recommendations of [the Civil Rights Office's] expert consultant intended for evaluation and review by [the Civil Rights Office]. [The Civil Rights Office's] expert consultant is an expert retained by [the Civil Rights Office] to conduct preliminary fact-finding analysis and provide preliminary recommendations for further review by [the Civil Rights Office].

*Id.*

Plaintiff's conclusory and unsupported statements that the subject matter expert reports in dispute contain non-privileged facts fails to create a genuine dispute sufficient to survive summary judgment. *See Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 55 (D.D.C. 2011); *Cleveland v. United States*, 128 F. Supp. 3d 284, 291 (D.D.C. 2015) (citations omitted) ("In opposing a summary judgment motion, a party may not 'replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit,' . . . but rather must 'set forth specific facts showing that there is a genuine issue [of fact].").

Plaintiff argues that it can be inferred that the expert reports at issue here contain segregable facts because the Department applied redactions (and only withheld in part) other subject matter reports in productions to Plaintiff and another requester. *See* Pl.'s Mem. at 10-11; Pl.'s Ex. G. Plaintiff's Exhibit G contains a copy of a Corrections Expert's Report on the Adelanto Correctional Facility dated November 16, 2017 (the "Adelanto Report"). The Adelanto Report is not one of the reports at issue here with contested Exemption 5 withholdings. According to Plaintiff, "the fact that [the Civil Rights Office] redacted the three Adelanto [subject matter expert reports] provided to [Plaintiff] confirms that segregation is possible in all the [subject matter expert reports]." Pl.'s Mem. at 11. Yet, the Department's *Vaughn* index demonstrates that the expert reports are not all the same in form or substance. Plaintiff's arguments fail to create a genuine fact dispute that the Department's withholdings include facts that are reasonably segregable.

**B.      The Expert Reports Are Pre-Decisional.**

Plaintiff also fails to show that the Department failed to satisfy its burden of establishing

that the expert reports were predecisional.  A document is "predecisional" if it is "generated

before the adoption of an agency policy."  *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir.

2006).  As another Court reasoned, "[c]ontrary to plaintiff's assertion that materials lose their

Exemption 5 protection once a final decision is taken, it is the document's role in the agency's

decision-making process that controls."  *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100,

112-13 (D.D.C. 2005).  Because Exemption 5 is intended to protect free flow of advice, issuance

of decision does not remove need for protection.  *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v.

Merrill*, 443 U.S. 340, 360 (1979).  Moreover, "'even if an internal discussion does not lead to

the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed

as long as the document was generated as part of a definable decision-making process.'"  *Hall &

Assocs. v. EPA*, Civ. A. No. 18-1749 (RDM), 2021 WL 1226668, at *10 (D.D.C. Mar. 31, 2021)

(quoting *Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 762 F. Supp.

2d 123, 135-36 (D.D.C. 2011)).[3]

The Department's *Vaughn* index and supporting declaration sufficiently explain what

deliberative process was involved and the role played by the expert reports during that process.

*See* Defs.' SMF ¶¶ 23-28.  The Department's evidence establishes the Civil Rights Office's role

---

[3]      *See also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975) ("Our emphasis on
the need to protect pre-decisional documents does not mean that the existence of the privilege
turns on the ability of an agency to identify a specific decision in connection with which a
memorandum is prepared."); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868
(D.C. Cir. 1980) (agency's evidence must establish "what deliberative process is involved, and
the role played by the documents at issue in the course of that process"); *Gold Anti-Trust Action
Comm.*, 762 F. Supp. 2d at 136 (rejecting plaintiff's contention that "the Board must identify a
specific decision corresponding to each [withheld] communication").

in investigating complaints alleging civil rights and civil liberties issues and making

recommendations as part of the Agency's decision-making process concerning whether or how

to implement or operationalize a response to a complaint.  *See id.* ¶¶ 24-27.  The Department's

evidence further establishes the role that the experts' preliminary investigative reports play in the

Agency's decision-making process on how to address any civil rights or civil liberties concerns

that may be identified as part of its investigation.  *See id.* ¶ 28.  An expert's preliminary findings

and recommendations contained in these reports that the Agency withheld in full are further

reviewed and revised by the Civil Rights Office as more information and viewpoints are

accumulated through the ongoing decision-making process.  *See id.*  Moreover, the Civil Rights

Office's role is to advise Department leadership.  "While the Civil Rights Office can make

recommendations, to implement and operationalize those recommendations into a final agency

decision often takes a whole of Department approach, to include the Civil Rights Office and the

operational component, and other supporting offices or Department leadership if relevant."  *Id.*

¶ 26.

Plaintiff takes issue with the fact that the Department's evidence does not establish

"whether any of the investigations are closed."  Pl.'s Mem. at 9.  But the issue of whether the

Civil Rights Office may have later closed an investigation is immaterial.  *See Jud. Watch of Fla.,*

*Inc. v. Dep't of Just.*, 102 F. Supp. 2d 6, 16 (D.D.C. 2000) (rejecting as "unpersuasive" assertion

that deliberative process privilege is inapplicable after deliberations have ended and relevant

decision has been made).  Here, a decision to close an investigation would not establish that the

Civil Rights Office or the Department adopted an expert's preliminary findings or

recommendations.  As explained in the Agency's declaration, the expert reports at issue here

contain the experts' unverified observations of first impression.  *See* Defs.' SMF ¶ 22, 32.  The

Civil Rights Office is not required to adopt its experts' preliminary findings or recommendations. *See id.* ¶ 23.  The Civil Rights Office may have reviewed more than one expert report before preparing a recommendation memo with the Civil Rights Office's recommendations to the Department component that was the subject of the investigation.  *See id.* ¶ 24.  Additionally, the affected Department component may or may not concur with the Civil Rights Office's recommendations.  *Id.* ¶ 27.  Therefore, an eventual decision by the Department to close an investigation would not necessarily reflect the Agency's adoption of an expert's preliminary findings or recommendations.

Plaintiff also faults the Agency for detailing whether any of the information or substance from the expert reports was publicly disclosed.  *See* Pl.'s Mem. at 9.  But even assuming the Civil Rights Office later released a report, that would not alter the pre-decisional character of a document created by one of the Civil Rights Office's experts at an earlier stage of the decision-making process.  First, the Department's evidence establishes that the Civil Rights Office does not issue final decisions, but rather recommendations.  *See* Defs.' SMF ¶¶ 24-26.  Second, "[a] record or document can be predecisional in nature even when an agency subsequently makes a final decision on the issue discussed in the record or document."  *Smith v. Dep't of Lab.*, 798 F. Supp. 2d 274, 282 (D.D.C. 2011) (citing *Fed. Open Mkt. Comm.*, 443 U.S. at 360).  As explained above, an expert report does not lose their Exemption 5 protection from the later issuance of a public report that discusses an expert's preliminary findings or recommendations.  *See Elec. Priv. Info. Ctr.*, 384 F. Supp. 2d at 100, 112-13.  That report still qualifies as a predecisional communication because it was generated as part of a continuing process of agency decision-making.  *See Coastal States*, 617 F.2d at 868; *Elec. Priv. Info. Ctr.*, 384 F. Supp. 2d at 112.

**IV.**     <u>**The Department's Evidence Shows Reasonably Foreseeable Harm.**</u>

The foreseeable-harm requirement imposes an "independent and meaningful burden on agencies." *Ctr. for Investigative Reporting v. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019). "To meet this meaningful burden, an agency must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld." *Keeping Gov't Beholden, Inc. v. Dep't of Just.*, Civ. A. No. 17-1569 (FYP), 2021 WL 5918627, at *8 (D.D.C. Dec. 13, 2021) (internal quotation marks, alterations, and citation omitted). "Agencies may take a categorical approach and group together like records . . . but when using a categorical approach, agencies must provide more than nearly identical boilerplate statements and generic and nebulous articulations of harm." *Id.* (internal quotation marks, alterations, and citations omitted). An agency must instead offer "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107.

On the first of the two protected interests implicated here, Defendants' evidence shows that release of the privileged material will impede the Department's ability to investigate allegations of civil rights and civil liberties violations. Defs.' SMF ¶ 23. The evidence provides the necessary "context" and "insight" into the specific decision-making process at issue and how Court-ordered disclosure will cause harm to the Agency's deliberative process. *Jud. Watch, Inc. v. Dep't of Just.*, Civ. A. No. 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019). As Defendants' Motion demonstrated, disclosure of the privileged portions of the expert reports would reveal the Agency's "evolving thought-processes" and thus undermine the Agency's ability to "freely engage in the candid 'give and take' and to seek advice and input to further

15

agency policy or actions."  *See Keeping Gov't Beholden*, 2021 WL 5918627, at *10 (citation

omitted) (finding that disclosure would "impair everyone involved . . . from 'thinking, writing,

and advising freely,' which in turn 'could harm the quality and accuracy of Directors' statements

in the future'").

      In the same way here, the Department's evidence shows that the Civil Rights Office's

subject-matter experts would be unable to offer their uninhibited opinions and recommendations

concerning the allegations in the civil rights complaints under investigation without continued

assurances of confidentiality.  Defs.' SMF ¶ 30; *see also Abtew v. Dep't of Homeland Sec.*,

808 F.3d 895, 898 (D.C. Cir. 2015) (internal quotation marks and citation omitted) (the

deliberative-process privilege "serves to preserve the open and frank discussion necessary for

effective agency decisionmaking").  Without the continued assurance of confidentiality, the Civil

Rights Office's expert consultants would not provide the Department with the meaningful

information it needs to properly investigate civil rights complaints.  Therefore, maintaining the

confidentiality of these types of pre-decisional and deliberative communications is critical for the

Department to carry out its mission.  Defs.' SMF ¶ 31.

      On the second protected interest, the Department's evidence further establishes that it

would cause public confusion to release its subject-matter experts' preliminary findings and

recommendations.  Defs.' SMF ¶ 32; *see also Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*,

598 F.3d 865, 874 (D.C. Cir. 2010) (citation omitted) (recognizing that the deliberative process

privilege serves to "protect against . . . misleading the public by dissemination of documents

suggesting reasons and rationales for a course of action which were not in fact the ultimate

reasons for the agency's action").

In both cases, the Department's explanation sufficiently "identif[ies] specific harms to the relevant protected interests" that would result from disclosure of the withheld materials. *Jud. Watch*, 2019 WL 4644029, at *5. "Indeed, 'it is difficult to see how [the Agency] could have provided any additional explanation as to how disclosure of the draft will cause future agency communications to be chilled.'" *Keeping Gov't Beholden*, 2021 WL 5918627, at *10 (citation omitted). The supporting evidence thus satisfied the Department's meaningful burden to show that disclosure of the redacted portions of the expert reports will cause reasonably foreseeable harm to two interests protected by Exemption 5.

Rather than address the Agency's justifications for the contested withholdings in this case, Plaintiff attempts to shift the focus to a previous disclosure of expert reports regarding the Adelanto facility in response to a different FOIA request that is not the subject of this action. *See* Pl.'s Mem. at 19.[4] According to Plaintiff's theory, to justify its withholdings in this matter the Agency must show that an earlier disclosure of expert reports that were similar in purpose and content caused harm. But that is not the correct standard. Under the plain language of the FOIA statute, an agency may withhold information "if . . . the agency reasonably foresees that disclosure would harm an interest protected by [one of the nine FOIA] exemption[s]." 5 U.S.C. § 552(a)(8)(A)(i)(I). To satisfy this requirement, an agency need not prove to a certainty that a past disclosure of similar records caused actual harm to an agency's decision-making process. Moreover, the argument improperly assumes that all the reports are exactly the same, which they are not. *See* Pl.'s Mem. at 19 ("Obviously, [the Civil Rights Office] did not believe that production would result in any harm but, now, claims that harm will occur if it produces the

---

[4]    None of the expert reports that the Department produced as part of this case concern the Adelanto facility. *See generally* Agency *Vaughn* index.

exact same reports to [Plaintiff].").  That argument fails to account for the Agency's evidence

that explains, with sufficient detail and specificity, why release of each of the 33 individual

reports in dispute here would cause foreseeable harm to the Department's decision-making

process.  The Court should thus conclude that the Department has "sufficiently connected the

disclosure of all the withheld information to a reasonably foreseeable harm."  *See Keeping Gov't*

*Beholden*, 2021 WL 5918627, at *12.

## <u>Conclusion</u>

Plaintiff fails to establish the existence of a genuine dispute of material fact as to any of

the contested Exemption 5 withholdings and has forfeited challenging the search.  Therefore,

Defendants respectfully request that the Court grant Defendants' motion for summary judgment,

deny Plaintiff's cross-motion, and enter summary judgment in Defendants' favor.

Dated: September 15, 2022          Respectfully submitted,
      Washington, DC

                                    MATTHEW M. GRAVES, D.C. Bar. #481052
                                    United States Attorney

                                    BRIAN P. HUDAK
                                    Chief, Civil Division

By:        */s/ Daniel P. Schaefer*
                 DANIEL P. SCHAEFER, D.C. Bar # 996871
                 Assistant United States Attorney
                 601 D Street, NW
                 Washington, DC 20530
                 (202) 252-2531
                 Daniel.Schaefer@usdoj.gov

                 *Counsel for Defendants*