**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.,** | |
| *Plaintiffs,* | |
| **v.** | **Case No. 1:18-CV-2051-RCL** |
| **U.S. DEPARTMENT OF HOMELAND SECURITY, OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES,** | |
| *Defendants.* | |

## MEMORANDUM OPINION

This case concerns a request that plaintiff Project on Government Oversight, Inc. ("POGO") made of defendant, the United States Department of Homeland Security ("DHS" or "the Department"), pursuant to the Freedom of Information Act ("FOIA"), Pub. L. No. 89-487, 80 Stat. 250 (1966), for certain information relating to the Department's civil rights and civil liberties inquiries from 2015 to the present.

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 52 and 53. For the reasons that follow, Defendant's Motion for Summary Judgment will be **DENIED**, and Plaintiffs' Cross-Motion for Summary Judgment will be **GRANTED** in part and **DENIED** in part.

## I.      BACKGROUND

### A. POGO's FOIA Request

The FOIA request at issue concerns records of DHS's Office of Civil Rights and Civil Liberties ("CRCL"), which supports DHS's mission while working to "preserv[e] individual liberty, fairness, and equality under the law," including through investigating complaints filed by

the public regarding Department policies, activities, or actions. Def.'s Statement of Undisputed Material Facts ¶ 5, ECF No. 52-2 ("DSUMF").

POGO submitted two FOIA requests to DHS on June 1, 2018. The first request ("Request 1") sought complaint data maintained by CRCL from January 1, 2015 through the present, including "summaries of complaints, the original text of the complaint, status of the complaint, corrective actions taken, etc." Letter, Nick Schwellenbach to DHS (June 1, 2018), Ex. E to Compl., ECF No. 1-5. The second request ("Request 2") sought "[a]ny records memorializing the findings of [CRCL] investigations…or 'short form resolutions', and records of notifications from CRCL to the Justice Department that involve complaints of state or local law enforcement agencies, acting under state law, that come to CRCL" from January 1, 2015 through the present. Letter, Nick Schwellenbach to DHS (June 1, 2018), Ex. G to Compl., ECF No. 1-7.

POGO received an acknowledgment letter for each request from DHS on June 4 and June 5, 2018, respectively. Compl. at ¶¶ 28, 33. After 20 days from receipt of each request, DHS invoked a 10-day extension pursuant to 6 C.F.R. Part 5 § 5.5(c) but failed to provide any documents by the extension expiration. *Id.* at ¶¶ 29, 34, 37.

**B. Proceedings in this Court**

POGO filed the present action on August 31, 2018, seeking declaratory and injunctive relief. On January 30, 2019, the Court ordered DHS to produce a *Vaughn* index[1] and accompanying dispositive motion within 30 days. *See* Order, ECF No. 11. On the parties' joint motion, the Court vacated that deadline and approved a scheduling order whereby the parties would file a joint status report addressing the status of DHS's records production and responses and propose a schedule

---

[1] A *Vaughn* index is a table, common in FOIA cases, "describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).

for further proceedings every 45 days. *See* Order, ECF No. 14; Joint Mot. to Vac. at 2, ECF No. 13.

In the course of the lawsuit, POGO agreed that it was willing to stop production of documents responsive to Request 1. Pls.' Statement of Undisputed Material Facts ¶ 20, ECF No. 53-2 ("PSUMF"). POGO also narrowed the scope of Request 2 to "onsite investigative documents," which it clarified refers only to subject matter expert reports ("expert reports"). *Id.* ¶ 36; Def.'s Mem. in Supp. of S.J. at 5, ECF No. 52-1 ("Def's Mem.").

CRCL produced over 500 documents in response to Request 2, although the parties dispute the precise number. DSUMF ¶ 9, ECF No. 52-3; Pls.' Resp. to Def.'s Statement ¶ 3, ECF No. 53-2. Ultimately, documents responsive to the final scope of Request 2 include three expert reports heavily redacted pursuant to FOIA Exemptions 5 and 6, which DHS had already given to National Public Radio (NPR) virtually unredacted pursuant to this court's order. PSUMF ¶¶ 15, 16, ECF No. 53-2. POGO also requested a *Vaughn* index addressing reports that had been completely withheld. Joint Status Rep. (July 23, 2021), ECF No. 38. On November 4, 2021, CRCL produced a draft *Vaughn* index with 33 expert reports that CRCL completely withheld based on FOIA Exemptions 5 and 6. Joint Status Rep. (Jan. 13, 2021), ECF No. 44; *Vaughn* Index, Ex. A to Def. Mot. for S.J., ECF No. 52-4. The parties would "confer to try to resolve any remaining disputes" concerning DHS's contested Exemption 5 withholdings. Joint Status Rep. (Jan. 13, 2022), ECF No. 44.

The parties determined that they had reached an impasse on the contested Exemption 5 withholdings, and they filed a joint proposed summary judgment briefing schedule on April 13, 2022. *See* Joint Status Rep. (April 13, 2022), ECF No. 48. The court approved this schedule on April 14, 2022. Order, ECF No. 49.

Pursuant to the motion for summary judgment scheduling order, DHS filed its motion for summary judgment and accompanying *Vaughn* index, ECF Nos. 52, 52-4, on June 15, 2022. POGO filed its cross-motion for summary judgment, ECF No. 53, on July 15, 2022. In its opening brief, the DOJ addressed the only issue it considered to be in dispute – the appropriateness of its Exemption 5 withholdings. In its cross-motion, POGO additionally asserted that the Department's search was inadequate because it only produced 33 subject matter expert reports in its Vaughn index while subject matter experts allegedly conduct 10 to 15 on-site investigations per facility annually. Pls.' Mem. in Supp. of S.J. at 7, n.5, ECF No. 53-1. In reply, DHS argued that POGO had waived its ability to challenge the sufficiency of DHS's search by limiting the scope of the issue to the contested Exemption 5 withholdings in joint filings and contemporaneous communications. Def.'s Reply at 1–6, ECF No. 56. With the summary judgment briefing now complete, both motions are ripe for review.

## II.   LEGAL STANDARDS

### A. The Freedom of Information Act

FOIA provides a mechanism for members of the public to obtain government records. The statute "mandates a strong presumption in favor of disclosure," *A.C.L.U. v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (internal quotation marks and citation omitted), and "agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions," *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). Furthermore, under the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016), an amendment to the statute that Congress enacted in 2016, the requested agency may only withhold information if it "reasonably foresees that disclosure would harm an interest protected by" the relevant exemption, 5 U.S.C. § 552(a)(8)(A)(i)(I).

In this case, DHS invoked FOIA Exemptions 5 and 6. Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." *Id.* § 552(b)(5). Exemption 6 extends to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6).

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court evaluating a summary judgment motion must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Arthridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010) (internal quotation marks and citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). "An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions." *Am. Civ. Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Typically it does so by affidavit," *id.*, and by submitting "*Vaughn* indices describing the withheld documents and explaining why the withheld information fell under the claimed

exemptions." *Larson*, 565 F.3d at 862. "Summary judgment is warranted on the basis of agency affidavits [and the *Vaughn* index] when the affidavits [and/or the *Vaughn* index] describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (internal quotation marks omitted) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. C.I.A.*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted).

However, "[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). The Court must also determine whether the agency has shown "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). If the Court finds it necessary "in order to make a responsible de novo determination on the claims of exemption," it may, in its discretion, conduct in camera review of the records at issue. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987); *see* 5 U.S.C. § 552(a)(4)(B).

### III.    ANALYSIS

The cross-motions for summary judgment concern two primary disputes. First, POGO argues that DHS's search was inadequate because it resulted in far fewer expert reports than expected. DHS counters that POGO waived its right to challenge the sufficiency of DHS's search. Second, POGO argues that DHS improperly relied on Exemption 5 to withhold information in the documents listed in its *Vaughn* index and provided in redacted form. For the reasons that follow,

the Court agrees with DHS that POGO waived its right to challenge DHS's search explicitly in email communications and implicitly in joint status reports. Consequently, the Court's review of the merits is limited to the documents provided and listed in the *Vaughn* index. On this point, the Court agrees with POGO that DHS's Exemption 5 withholdings were improper because the Department has not demonstrated that reasonably foreseeable harm would result from disclosure.

## A. Adequacy of DHS's Search

To succeed on its motion for summary judgment, DHS "must show that it made a good faith effort to search for the requested records." *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp.3d 54, 66 (D.D.C. 2020) (quoting *Oglesby*, 920 F.2d at 68). While an agency is not required to search *every* record system, the agency must set forth facts (typically in an affidavit) to establish that no other record system was likely to produce responsive documents. *Id.* (citing *Rep. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017)). POGO maintains that DHS has failed to perform an adequate search. Pls.' Mem. in Supp. of Cross-Mot. for S.J. ("Pls.' Mem.") at 7, n.5, ECF No. 53-1. The Court agrees with DHS that POGO has waived any challenge to the adequacy of the search and therefore will grant summary judgment to DHS on that issue.

## 1. POGO waived its ability to challenge the adequacy of the search.

POGO argues in its cross-motion for summary judgment that DHS's search was inadequate because it only resulted in 36 subject matter expert reports from 2015 to present, whereas a CRCL report indicates that "experts conduct annually 10-15 on-site investigation [sic] per facility".[2] Pls.' Mem. at 7, n.5; Ex. A to Compl., ECF No. 1-1. In reply, DHS argues that POGO waived its right

---

[2] While POGO asserts that the CRCL report represents that experts conduct 10-15 investigations per facility per year, the report cited states, "[CRCL] schedules 10-15 intensive site visits each year to ICE detention facilities..." Report of the Subcommittee on Privatized Immigration Detention Facilities, Ex. A to Compl. at 14, ECF No. 1-1. It appears from this phrasing that CRCL only conducts 10-15 site visits total per year, in which case DHS' production of 36 expert reports from 2015 to when the request data was pulled in 2018 does not appear to be the drastic underestimate that POGO claims.

to challenge the sufficiency of DHS's search based upon an express waiver in an email exchange and the absence of such a challenge in all subsequent status reports. Def.'s Reply at 1–6, ECF No. 56.

After POGO narrowed its initial request, the parties disputed whether DHS should conduct a narrower supplemental search or continue sifting through over 32,000 documents pulled from the original search criteria. *See* Def.'s Status Rep. (Feb. 23, 2021), ECF No. 30 at 5–8. DHS explained that this was not required and would be impractical. Letter, Daniel Schaefer to Ross Nabatoff, Ex. 5 to Def.'s Status Rep. (Feb. 23, 2021), ECF No. 30-5. According to DHS, the parties had no further disagreement about the responsiveness criteria or review protocol. Def.'s Reply at 3. On June 23, 2021, DHS sent an email to POGO outlining the process for the remaining document productions. As part of that process, DHS stated, "[t]he Agency will not be required to justify the sufficiency of its searches or its responsiveness review, as that was negotiated between the parties and is no longer in dispute, nor will the agency be required to prepare a *Vaughn* index or supporting declaration for other withholdings that Plaintiff does not identify as contested and still in dispute as part of this meet and confer process." Letter, Daniel Schaefer to Ross Nabatoff, Ex. 4 to Def.'s Reply, ECF No. 56-4. DHS asked POGO to confirm that it agreed with the process outlined, to which POGO replied the same day, "[w]e are in agreement and the draft JSR is approved for filing." Letter, Ross Nabatoff to Daniel Schaefer, Ex. 4 to Def.'s Reply, ECF No. 56-4.

In addition to an express waiver via email, DHS points to the fact that all subsequent joint status reports refer only to the parties' dispute over Exemption 5 withholdings. For example, a May 24, 2021 joint status report states, "the parties shall file another joint status report on or before June 23, 2021, that identifies *any outstanding disputes* in this matter," while all reports following the June 23, 2021 email refer to "any outstanding questions or objections Plaintiff may raise

*concerning any contested withholdings* from the Agency's productions." Joint Status Rep. (May 24, 2021), ECF No. 34 (emphasis added); Joint Status Rep. (June 23, 2021), ECF No. 36; Joint Status Rep. (April 12, 2022), ECF No. 48. The final joint status report requests a summary judgment briefing schedule because "the parties have reached an impasse on the contested Exemption 5 withholdings," and cites no other reason. Joint Status Rep. (April 12, 2022), ECF No. 48. According to DHS, this reflects the fact that the parties narrowed the dispute solely to the exemptions.

This Court has held on multiple occasions that "where sophisticated parties to a FOIA case have agreed to narrow the issues in a written status report, they generally may be held to their agreement under traditional waiver principles." *Am. Ctr. for Law & Just. v. U.S. Dep't of Just.*, 325 F.Supp.3d 162, 168 (D.D.C. 2018) ("*Am. Ctr.*"); *DeFraia v. C.I.A.*, 311 F.Supp.3d 42, 48 (D.D.C. 2018) (finding plaintiff waived right to challenge withholdings of certain documents when joint status report narrowed the dispute to specific contracts). This includes waiving the right to challenge the sufficiency of an agency's FOIA search. *See, e.g., Am. Ctr.*, 325 F.Supp.3d at 167–70; *Cayuga Nation v. U.S. Dep't of Interior*, 2022 WL 888178, at *3 (D.D.C. March 25, 2022); *Moore v. C.I.A.*, 2022 WL 2983419, at *3 (D.D.C. July 20, 2022).

While this Court has recognized that waiver of a FOIA challenge typically happens in joint status reports, "the common law concept of waiver...includes inferences from the words and actions of the parties." *Cayuga Nation*, 2022 WL 888178, at *4 (quoting *Molton, Allen & Williams, Inc. v. Harris*, 613 F.2d 1176, 1179 (D.C. Cir. 1980)); *see, e.g., DeFraia*, 311 F.Supp.3d at 48 (finding waiver in a joint status report); *Gilman v. U.S. Dep't of Homeland Sec.*, 32 F.Supp.3d 1, 22 (D.D.C. 2014); *People for Am. Way Found v. U.S. Dep't of Just.*, 451 F.Supp.2d 6, 12 (D.D.C. 2006). It is abundantly clear from the June 23, 2022 email that POGO knowingly and voluntarily

intended to waive its right to challenge the adequacy of DHS's search because it explicitly agreed to such a waiver. *Compare Moore*, 2022 WL 2983419, at *3 (contemporaneous telephone call did not waive plaintiffs right to challenge sufficiency of agency search where it was not recorded and plaintiff disputes defendant's representation of the call). This is reflected in the shift in joint status reports from referring to any remaining disputes to only disputes related to Exemption 5 withholdings, and in the parties' limitation of the Court's involvement to only the Exemption 5 withholdings. *See also Am. Ctr.* 325 F.Supp.3d, at 169 ("by agreeing to limit the Court's involvement to deciding the parties' dispute about DOJ's withholdings, ACLJ knowingly and voluntarily waived all other issues it might reasonably have anticipated, including any challenge to the adequacy of DOJ's search.").

POGO does not dispute the existence of the email exchange or content of the status reports. Rather, it asserts that the negotiations referred to in the email only addressed the parameters of the search, not actual search methods and, "[s]ince POGO lacked any knowledge of the agency's search methodology, it could not possibly agree to waive its right to contest the adequacy of the search." Pls.' Reply at 4–5, ECF No. 60.

The Court finds this argument unavailing. A failure to inquire further about search methodology does not prevent a party from knowingly and voluntarily waiving its right to challenge it later. *See Am. Ctr.*, 325 F.Supp.3d at 170 (holding that plaintiff's failure to confer with the government agency about its FOIA search methodology did not prevent it from waiving its ability to challenge the adequacy of the search).

**2. Justice does not require the Court to disregard the waiver.**

Even if a waiver is knowing and voluntary, courts have the discretion to decline to enforce the waiver where it would be unjust to do so. *Id.* at 169; *see, e.g., Cayuga Nation*, 2022 WL

888178, at *4 (declining to enforce plaintiff's waiver of the right to challenge the adequacy of a DOJ FOIA search where "the inadequacy of the search was obvious").

Here, POGO argues that it only discovered the CRCL report describing the number of expert annual site visits on July 23, 2022, *after* the email exchange and final joint status report. Consequently, it could not have known to challenge the adequacy of DHS's search. Pls.' Mem. at 7, n.3, ECF No. 53-1. This Court has rejected such an argument before. *Am. Ctr.*, 325 F.Supp.3d at 170 (rejecting plaintiff's argument that the court should decline to enforce a waiver because they discovered documents that they should have received through the FOIA search after the fact, given that plaintiff had ample opportunity to interrogate the agency's search methodology and was not misinformed about it). The adequacy of a FOIA search "is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Cayuga Nation*, 2022 WL 888178, at *3 (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). Similarly, POGO had every opportunity to inquire about and assess DHS's search methodology.

In sum, POGO waived its right to challenge the adequacy of the FOIA search explicitly via email to DHS and through joint status reports that, when viewed in context of prior reports and contemporaneous communications, narrowed the issues solely to contested Exemption 5 withholdings. There is no reason for the Court to decline to enforce this waiver, given that POGO had many opportunities to inquire about DHS's search methodology well before requesting the Court's intervention in this case, and given a lack of evidence that DHS's approach was at all misleading. Consequently, DHS will not be required to redo its search. The remainder of this opinion addresses only the reports listed in DHS' *Vaughn* index and given in a redacted form.

**B. Exemption 5 Withholdings**

DHS cited both FOIA Exemption 5 and Exemption 6 to justify withholding information responsive to Request 2. At this stage, POGO only challenges the Exemption 5 withholdings. Accordingly, the Court need only consider whether DHS properly applied Exemption 5.

As a threshold matter, Exemption 5 will only apply if the agency shows that the information withheld was "inter-agency or intra-agency." 5 U.S.C. § 552(b)(5). POGO does not dispute that the information withheld satisfies this requirement.

"To carry its burden at summary judgment" in a FOIA Exemption 5 case, "the government must demonstrate that (A) the materials at issue are covered by the deliberative process privilege, and (B) it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Rep. Comm. for Freedom of the Press v. Fed. Bur. of Investig.*, 3 F.4th 350, 361 (D.C. Cir. 2021). The Court notes that the facts and issues presented in this case are virtually indistinguishable from those in a recent case, *Nat'l Public Radio, Inc. v. U.S. Dep't of Homeland Sec.*, 2022 WL 4534730 (D.D.C. Sept. 28, 2022) ("NPR"). For the same reasons laid out in *NPR*, the Court concludes that DHS has met its burden on the first requirement with respect to only some of the information withheld, and that it has not met its burden at all on the second requirement. Accordingly, DHS may not withhold any of the responsive information at issue under FOIA Exemption 5.

**1. The Deliberative Process Privilege Applies to Only Some of DHS's Withholdings**

The deliberative process "privilege may only be invoked for documents that are both predecisional and [2] deliberative." *Rep. Comm.*, 3 F.4th at 362. In this case, DHS argues that all information withheld is both predecisional and deliberative. In response, POGO argues that the

withheld expert reports and redactions are either not predecisional or have lost their predecisional status. On this point, the Court agrees with DHS.

### a. DHS has shown that the information withheld is predecisional.

DHS argues that the withheld information is predecisional because it was prepared to inform CRCL policy recommendations to DHS. POGO counters that at least some of the information within the reports is not predecisional because CRCL cannot point to any agency decision or policy to which the documents entirely withheld contributed.

"Documents are 'predecisional' if they were generated before the agency's final decision on the matter." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021). However, "[t]o show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish 'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. U.S. Dep't of Justice*, 182 F.Supp.2d 1, 7 (D.D.C. 2000) (Hogan, J.) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

DHS asserts, and POGO does not dispute, that CRCL's "statutory role is to advise DHS leadership and personnel about civil rights and civil liberties issues." Def.'s Mem. at 15, ECF No. 52-1. DHS's position is that CRCL-retained experts conduct routine investigations of detention facilities and share their findings and recommendations to help inform CRCL's policy recommendations to DHS about what, if any, action should be taken at each facility. *See* DSUMF ¶ 24, ECF No. 52-2 (citing Decl. of Rosemary Law ("Law Decl.") ¶ 28, Ex. 1 to Def.'s Mot. for S.J., ECF No. 52-3. This justification is "reasonably specific, logical, and uncontroverted by other evidence in the record or by evidence of bad faith, which is all FOIA requires of an agency at the summary judgment stage." *NPR*, 2022 WL 4534730, at *4 (citing *Larson*, 565 F.3d at 862).

POGO argues that the documents entirely withheld cannot be predecisional because neither the *Vaughn* index nor affidavits "pinpoint any agency decision or policy" to which any of the documents contributed. Pls.' Mem. at 13, ECF No. 53-1. POGO ultimately relies on *Senate of Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987), in which the Circuit determined that DOJ documents were not predecisional because DOJ failed to identify "specific final decisions" to which the document contributed. However, more recent Circuit precedent clarifies that "information may also be predecisional if it is prepared as part of a deliberative process about an existing policy that is the subject of public criticism." *NPR*, 2022 WL 4534730, at *5 (citing *Rep. Comm.*, 3 F.4th at 362–63; *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993); *Access Rep. v. Dep't of Justice*, 926 F.2d 1192, 1194–97 (D.C. Cir. 1991)). DHS retained experts to produce the reports at issue precisely to contribute to an ongoing deliberative process. Given that agencies are continuously reevaluating their policies, "it makes little sense for the privilege to turn on the identification of a specific decision." *Id.* (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975)). Consequently, the reports withheld are predecisional.

POGO correctly states that any information withheld loses its predecisional status if it is "adapted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). However, POGO has not identified any specific advice or recommendations in the Exemption 5 withholdings or expert report redactions that later became DHS's position. Thus, POGO has not demonstrated that any information withheld or redacted has lost its predecisional status.

For these reasons, DHS has shown that its Exemption 5 withholdings and expert report redactions are predecisional, and thus meet the first of the deliberative process privilege's two requirements.

### b. DHS has not shown that all of the withheld information is deliberative.

Turning to the second requirement, DHS argues that all of the information withheld qualifies as deliberative because it contains "unverified observations of first impression, expert analyses of facts and information gathered during the course of the expert's investigation of the facility, and the uninhibited opinions and recommendations of the Civil Rights Office's expert consultant intended for evaluation and review by the Office." Def.'s Mem. at 16–17. POGO does not dispute that information constituting analysis, opinion, or recommendation are deliberative, but rather that "unverified observations of first impression" are not deliberative. Such purely factual information is not protected by Exemption 5.

DHS puts forward precisely the same argument that this Court rejected in *NPR*. There, the Court noted that, to be deliberative, a "document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 10. Conversely, "[p]urely factual material usually cannot be withheld under Exemption 5 unless it reflects an exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotation marks and citation omitted). The Court rejected DHS's argument that "unverified observations of first impression" is a category of deliberative information primarily because this proposition "finds no support in extant FOIA jurisprudence." *NPR*, 2022 WL 4534730, at *6. Most of the cases cited in support by DHS in *NPR* dealt with the "culling or organization of an *existing* set of facts into a summary, not the initial *finding* of those facts." *Id.* Given that DHS now cites the same cases for the same

proposition, its argument is equally unpersuasive. There as here, DHS has not cited a single case in which a court has held that factual information was deliberative simply because it was "unverified" or an "observation of first impression."

Because "unverified observations of first impression" are not deliberative in nature, the deliberative process privilege applies only to the withholdings in this case that represent the experts' analysis, opinions, or recommendations.

## 2. DHS Has Not Adequately Demonstrated Reasonably Foreseeable Harm

Although DHS has shown that Exemption 5 applies to portions of reports representing experts' analysis, opinions, or recommendations, it has not met FOIA's independent requirement that an agency demonstrate "reasonabl[e] foresee[ability] that disclosure would harm an interest protected by" the relevant exemption, in this case Exemption 5. 5 U.S.C. § 552(a)(8)(A)(i)(I). DHS argues that disclosure would result in reasonably foreseeable harm because it would (1) undermine the confidentiality experts need to offer candid advice and (2) result in public confusion about the Department's position. For the same reasons laid out in *NPR*, the Court agrees with POGO that DHS has not made that showing with respect to any of the Exemption 5 withholdings.

### a. DHS's deliberation-chilling justification is insufficiently specific.

"In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'– not 'could'–adversely impair internal deliberations." *Rep. Comm.,* 3 F.4th at 369–70. The agency may not simply rely on "boilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions." *Id.* at 370. Rather, it must give "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the

specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*

Here, DHS relies on the same justifications that *NPR* rejected as boilerplate. The Law Declaration repeats the primary justification for its Exemption 5 withholdings verbatim without further explanation:

> Court-ordered disclosure of the information would severely undermine the Department's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process outlined above to offer uninhibited opinions and recommendations on the matters at issue. Without the continued assurance of confidentiality, CRCL's expert consultants would not provide the Department with the meaningful information it needs to properly investigate civil rights complaints. Maintaining the confidentiality of these types of predecisional and deliberative communications is critical for the Department to carry out its mission.

Law Decl. ¶ 33. Each *Vaughn* index entry expresses this same justification:

> Disclosure of this information would chill the free and frank exchange of ideas and recommendations at DHS, including between CRCL's expert and CRCL, and between CRCL and the affected DHS component agencies that have been the subject of complaints that require investigation. Release of the information would severely undermine the Agency's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process ... to offer uninhibited opinions and recommendations on the matters at issue.

*Vaughn* Index ¶ 1, Ex. A to Def.'s Mot. for S.J., ECF No. 52-4.

As the Court noted in *NPR*, these justifications are as vague as those rejected in *Reporters Committee* and less specific than those accepted in other cases. *NPR*, 2022 WL 4534730, at *8. "The fatal flaw in DHS's first 'reasonably foreseeable' justification," the Court reasoned, "is that it is essentially a restatement of 'the generic rationale for the deliberative process privilege itself.'" *Id.* (quoting *Rep. Comm.*, 3 F.4th at 370). "Nowhere does [DHS] explain *why* disclosure of these *specific types* of reports would chill deliberations more than that of any generic documents to which the deliberative process privilege applies." *Id.* DHS has not offered any more specific

explanations this time around. Its justifications thus do not demonstrate reasonably foreseeable harm from disclosure.

### b.  DHS's public confusion justification is likewise insufficiently specific.

DHS also argues that "the Department's evidence shows that it is reasonably foreseeable that release of the experts' preliminary findings and recommendations would cause public confusion." Def.'s Mem. at 19. The Law Declaration offers the same justification as that rejected in *NPR*, verbatim:

> Moreover, release could cause unnecessary public confusion .... [T]he Reports contain the experts' preliminary findings and recommendations. The Reports contain the experts' unverified observations of first impression. For any number of reasons, the Department may not necessarily agree with, or adopt the experts' findings or recommendations. In the Department's view, release of the experts' preliminary findings and recommendations poses a substantial risk of confusing the public as to any eventual final actions of the Department concerning the complaints in question, or the reasons for them.

Law Decl. ¶ 34.

While "[c]ourts have recognized guarding against public confusion as one of the interests protected by the deliberative process privilege, the FOIA Improvement Act does not allow agencies to show reasonably foreseeable harm simply by making boilerplate recitations about the potential for confusion to result from preliminary recommendations or findings." *NPR*, 2022 WL 4534730, at *9. As in *NPR*, DHS has not explained why any particular report would cause public confusion, but rather relies on a generic recitation of the rationale for the privilege itself. Consequently, this justification also does not meet the bar for establishing reasonably foreseeable harm under the FOIA Improvement Act.

For these reasons, the Court concludes that DHS has not demonstrated that it is "reasonably foresee[able] that disclosure" of any of its Exemption 5 withholdings "would harm an interest protected by" that exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I).

\*       \*       \*

In sum, DHS has sufficiently demonstrated that POGO waived its right to challenge the adequacy of DHS's search at this stage because it explicitly waived this right in email communications to DHS and limited the issues in this case to contested Exemption 5 withholdings in all subsequent joint status reports, including the final status report requesting a summary judgment briefing schedule. As a result, DHS will not be required to redo its search as part of this FOIA request.

Regarding the reports listed in DHS's *Vaughn* index or given in a redacted form, DHS has met its burden of showing that the deliberative process privilege applies to some, but not all of its Exemption 5 withholdings – those representing advice, recommendations, and opinions rather than factual findings. However, it has not met its separate burden of demonstrating that disclosure of any of those withholdings would cause reasonably foreseeable harm to an interest that Exemption 5 protects. Consequently, the Court holds that all of DHS's Exemption 5 withholdings in this case were improper.[3] As POGO only disputes the applicability of FOIA Exemption 5, nothing in this Memorandum Opinion nor the accompanying Order should be construed to require DHS to disclose information responsive to POGO's FOIA request that it withheld pursuant to any other FOIA exemption.

### 3. CONCLUSION

For the foregoing reasons, the Court will **DENY** DHS's motion for summary judgment, **GRANT** in part and **DENY** in part POGO's cross-motion for summary judgment, and **ENTER**

---

[3] Because the Court concludes that DHS may not lawfully withhold any of the responsive records in this case pursuant to Exemption 5, it has no occasion to consider whether any information lawfully withheld under that exemption is reasonably segregable from other information in the responsive records. The Court also has no occasion to consider POGO's argument that some of the redacted information is already public, and therefore may not be withheld under FOIA. *See* Pls.' Mem. at 9–12, 22.

**JUDGMENT** for POGO. The Court will further **ORDER** DHS to re-process POGO's FOIA request in a manner consistent with this Memorandum Opinion. Pursuant to Federal Rule of Civil Procedure 52(d)(2), plaintiff may move for an award of reasonable attorneys' fees and costs under 5 U.S.C. § 552(a)(4)(E)(i) within 14 days of the entry of this Order. A separate Order consistent with this Memorandum Opinion shall issue this date.

Date: February 20, 2023

Royce C. Lamberth
United States District Judge